# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| REBECCA D. BANNISTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | Civil Action No. 1:14CV741 |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Rebecca D. Bannister, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI"). The Court has before it the certified administrative record and cross-motions for judgment. For the reasons set forth below, the Court recommends that Plaintiff's motion (Docket Entry 9) be granted, the Commissioner's motion (Docket Entry 11) be denied, and the case be remanded for the awarding of benefits.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on January 14, 2011, alleging that she became disabled on January 8, 2011. (Tr. 158-164.)[1] The application was denied initially and again upon reconsideration. (*Id.* at 93, 102.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 107-109.) Present at the June 4, 2013 hearing

---

[1] Transcript citations refer to the administrative record which was filed with Defendant's Answer. (Docket Entry 7.)

were Plaintiff and her attorney. (*Id.* at 39.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 10-19.) Plaintiff requested that the Appeals Council review the ALJ's decision. (*Id.* at 6.) On June 30, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-3.) The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

Plaintiff was 47 years old on the alleged disability onset date. (Tr. 37.) She has an eleventh grade education and is able to read and write. (Tr. 40.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

2

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

3

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### A. The Five-Step Sequential Analysis

The Commissioner uses a five-step process to evaluate disability claims. 20 C.F.R. §§ 404.1520, 416.920. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* (citing 20 C.F.R. §§ 404.1520, 416.920(a)(4). The claimant bears the burden as to the first four steps, but the Commissioner bears the burden as to the fifth step. *Id.* at 472-73.

In undertaking this sequential evaluation process, the five steps are considered in turn, although a finding adverse to the claimant at either of the first two steps forecloses a determination of disability and ends the inquiry. In this regard, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990).

---

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4

If a claimant carries his burden at the first two steps and also meets his burden at step three of establishing an impairment that meets or equals an impairment listed in the regulations, the claimant is disabled, and there is no need to proceed to step four or five. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). Alternatively, if a claimant clears steps one and two but fails to show that the alleged impairment is sufficiently severe to equal or exceed a listed impairment, then the analysis continues and the ALJ must determine the claimant's RFC. *Id.* at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work;" if so, the claimant does not qualify as disabled. *Id.* at 179-80. However, if the claimant establishes that she is unable to return to her prior work based on that RFC, the analysis moves to the fifth step, which shifts the burden of proof to the Commissioner "to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). If, at this step, the Commissioner cannot carry her "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.

---

[4] "RFC is a measurement of the most a claimant can do despite his limitations." *Hines*, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes a "physical exertional or strength limitation" analysis that assesses the claimant's "ability to do sedentary, light, medium, heavy or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall*, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." *Hines*, 453 F.2d at 562-63.

5

*Hines*, 453 F.3d at 567.

Here, the ALJ completed all five steps of the sequence, and determined that while Plaintiff could no longer perform her past relevant work, she was not disabled because other jobs existed in significant numbers in the national economy which Plaintiff could perform. (Tr. 17-18.)

To reach his conclusion, in steps one and two the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 8, 2011 and had the severe impairments of schizoaffective disorder, mood disorder, major depressive disorder/anxiety disorders and chronic obstructive pulmonary disease (*Id.* at 12.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 12-13.) At step four, the ALJ assessed the Plaintiff's RFC, finding that she had the ability to perform light work except that she was limited to simple work with no fixed production rate, few changes and involving no more that occasional interaction with others; no outdoor work; and avoidance of concentrated pulmonary irritants, workplace hazards and temperature extremes. (Tr. 13.) Considering Plaintiff's age, education, work experience and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that therefore she was not disabled as defined by the Social Security Act.

Plaintiff argues that the ALJ erred in (1) giving little weight to the opinion of Plaintiff's treating physician regarding Plaintiff's physical restrictions; (2) failing to evaluate Plaintiff's respiratory impairment under Listing 3.02A; and (3) failing to consider the

6

Case 1:14-cv-00741-TDS-JLW   Document 14   Filed 08/25/15   Page 6 of 15

disability determination of the North Carolina Division of Vocational Rehabilitation Services pursuant to SSR 06-03p.

**B. The ALJ's Evaluation of Dr. Squire's Medical Opinion**

At step four, the ALJ found that Dr. Squire's medical opinions in his medical assessment statement were entitled to "significant weight" as they "related to the claimant's pulmonary problems," but "little weight" as to his opinions "regarding the claimant['s] physical restrictions because they are not supported by clinical evidence and imaging reports of the claimant's chest and the medical evidence as a whole." (Tr. 17.) Plaintiff argues that the ALJ erred in failing to give Dr. Squire's opinion controlling weight and in failing to take into consideration spirometry testing results which Dr. Squire used in rendering his opinion. The Commissioner argues that the evidence of record does not support the extreme and disabling functional limitations found by Dr. Squire. (Def.'s Mem. at 9, Docket Entry 12.)

Under the treating physician rule, the ALJ generally must give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment[s] and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). However, a treating physician's opinion is not due controlling weight when it is either "not supported by clinical evidence or if it is inconsistent with other substantial evidence." *Craig*, 76 F.3d at 590. A treating physician's opinion is not entitled to controlling weight where it is conclusory, based upon a claimant's subjective reports and not

7

supported by the physician's own medical notes. *Id.* Additionally, a treating physician's opinion will not be given controlling weight where the opinion lists diagnoses but fails to explain how such conditions impact the claimant's work-related abilities. *See Thompson v. Astrue*, 442 F. App'x 804, 808 (4th Cir. 2011).

In evaluating medical opinions, an ALJ should examine "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ "may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence," *Hunter*, 993 F.2d at 35, "the ALJ may not cherry-pick trivial inconsistencies between a treating physician's opinion and the record or take evidence out of context to discount the physician's opinion." *Meyer-Williams v. Colvin*, No. 1:14-CV-393, 2015 WL 339631, at *2 (M.D.N.C. Jan. 26, 2015) (Eagles, J.) (unpublished) (citing *Ellis v. Colvin*, 5:13CV00043, 2014 WL 2862703 (W.D.Va. June 24, 2014); *Bryant v. Colvin*, No. 3:12-CV-307-CAN, 2013 WL 6800127, at *12 (N.D. Ind. Dec. 20, 2013) (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011))).

An ALJ's decision not to afford controlling weight to a treating physician's opinion must be supported by substantial evidence in the record. *Winford v. Chater*, 917 F. Supp. 398, 400 (E.D. Va. 1996). In this case, the ALJ's evaluation of Dr. Squire's opinions is not supported by substantial evidence.

On April 23, 2013, Dr. Squire, Plaintiff's treating physician of several years, rendered his medical opinion on her symptoms, diagnoses and functional limitations. (Tr. 327-329.) Dr. Squire noted that Plaintiff suffers from severe COPD, and listed subjective findings which are consistent with this impairment, including dyspnea[5] multiple times a day, cough, and frequent use of an inhaler with bronchodilator medication and sputum production. (Tr. 327.) Dr. Squire also noted multiple objective findings, including "a productive sounding cough, severe airways obstruction affecting lung function, required use of an inhaled corticosteroid . . . , a long acting bronchodilator . . . and an anticholinergic agent tiotropium to control her symptoms along with a short acting bronchodilator albuterol . . . along with exacerbations that have required an antibiotic . . . and a systemic corticosteroid." (*Id.*) Dr. Squire then stated "[t]hese are chronic findings and are expected to worsen in the near future." (*Id.*)

Based on these findings, Dr. Squire opined that Plaintiff could lift only 1-2 pounds occasionally and should lift nothing frequently. (Tr. 327.) He further stated that Plaintiff has limitations walking and standing, and that she only has the ability to walk 200 feet without stopping to rest for 10 – 15 minutes. (*Id.*) Dr. Squire opined that "[c]umulative walking-capacity during a day [is] estimated to be less than 2 cumulative hours." (*Id.*) He noted:

> The relevant symptom for [Plaintiff] is dyspnea. She experience dyspnea multiple times each day and the sense of breathlessness that occurs intermittently throughout the day would be enough to require that she divert her attention and consider using her metered dose inhaler, the one that contains Albuterol which she uses for short term relief. The mere fact that

---

[5] "Dyspnea" is defined as "difficult or labored respiration." MERRIAM-WEBSTER DICTIONARY, found at www.merriam-webster.com/dictionary/dyspnea.

9

> she often must do this two or more times per day indicates that the combination of an inhaled corticosteroid and long acting bronchodilator have been ineffective controlling symptoms. These symptomatic experiences will continue to worsen unless she is able to cease smoking, but in this regard she may be the most addicted nicotine-addict that I have taken care of with commensurate difficulty in quitting. She's tried multiple times, but we are continuing to work on this problem.

(Tr. 328.)

The ALJ, while crediting Dr. Squire's opinion regarding Plaintiff's impairments, discounted the physician's opinion as to Plaintiff's functional limitations. The ALJ provided no clear reasons for not fully crediting Dr. Squire's opinion, stating only that the restrictions suggested by Dr. Squire "are not supported by clinical evidence and imaging reports of the claimant's chest and the medical evidence of record as a whole." (Tr. 17.) This Court finds that the ALJ's rejection of Dr. Squire's opinion as to functional limitations is not supported by substantial evidence. The three physical exams referred to by the ALJ, those in October 2012 and February 2013, were ones in which Plaintiff showed some improvement, but the overwhelming majority of the exams in the record show that Plaintiff has disabling limitations. (*See*, e.g., Tr. 276; 268; 272-73; 270; 268.)

For instance, on January 17, 2011, Dr. Squire noted Plaintiff's "markedly decreased air entry involving the right posterior, inferior and lateral chest wall," along with other similar findings. (Tr. 268.) Dr. Squire noted that Plaintiff had "been experiencing an exacerbation for over a month . . . and was still using her inhaler 4 times per day." (*Id.*) In February 2011, Dr. Squire again noted Plaintiff's "markedly decreased air entry" with noticeable wheezing and low bronchodilator responsiveness. (Tr. 264.) The treatment note also reported "prolonged expiration [and] inspiratory and expiratory wheezing." (*Id.*) In

March 2012, Dr. Squire noted that "[b]ased upon her lung functions and her degree of dyspnea, which includes being breathless with dressing or undressing[,] puts her in the category of severe COPD." (Tr. 340.) The record contains other similar treatment notes.

As noted by the ALJ, during her February 26, 2013 visit with Dr. Squire, Plaintiff had a normal lung exam without wheezing or coughing. (Tr. 331.) However, this note is one of the only ones in the record where Plaintiff was not experiencing significant respiratory symptoms and in fact is not illustrative of the longitudinal picture of Plaintiff's impairments and limitations. Additionally, this February 26, 2013 visit followed a period where Plaintiff had sought treatment in the emergency room for "seven to ten days of increasing cough, expectoration (clear), dyspnea with exertion and malaise" which resulted in multiple prescriptions, including steroids. (Tr. 334.) To selectively cite only this treatment note (along with one or two others), where Plaintiff showed some improvement after receiving emergency treatment, out of the record of the whole constitutes impermissible cherry-picking. "An ALJ cannot pick and choose just selected notes. Rather, the record must be assessed in its entirety." *Kirby v. Astrue*, 731 F. Supp. 2d 453, 456 (E.D.N.C. 2010). Here, "[t]he ALJ rejected the opinion of Plaintiff's treating physician which was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'was not inconsistent with the other substantial evidence in [the] case record.'" *Meyer-Williams*, 2015 WL 33961, at *3. The majority of Plaintiff's medical records are consistent with Dr. Squire's opinion.

Additionally, the ALJ stated in his decision that "[t]here are no pulmonary functions tests reports or back imaging evidence in the record to support a disabling breath or back impairment." (Tr. 15.) This finding completely ignores Dr. Squire's February 22, 2012

treatment note in which he reported spirometric test results showing "severe impairment of [Plaintiff's] lung function." (Tr. 340.) While the results themselves are not contained in the record, Dr. Squire reported the results and relied upon this clinical evidence in making his assessment. Under these circumstances, the ALJ has failed to show that Dr. Squire's opinions are "not supported by clinical evidence . . . and the medical evidence of record as a whole." *Craig*, 76 F.3d at 590.

Ultimately the question for this Court is whether substantial evidence supports the ALJ's finding that Plaintiff could perform work in the national economy on a regular and consistent basis. In light of the opinion of Plaintiff's treating physician, which is not contradicted by the longitudinal record or the objective medical evidence in this case, the Court holds that the ALJ's finding is unsupported by substantial evidence.

### C. ALJ's Failure to Consider Disability Determination of Vocational Rehabilitation[6]

Alternatively, Plaintiff argues that the ALJ erred by wholly failing to consider and weigh the determination of the North Carolina Division of Vocational Rehabilitation Services ("VR") finding Plaintiff unemployable. The record contains two letters from a Vocational Rehabilitation Counselor at VR. In the first letter, dated June 15, 2011, the VR counselor noted Plaintiff's significant physical limitations from COPD and concluded that her

> failing condition prevents our agency from placing her in employment that can accommodate her limitations. Ms. Bannister's mental health diagnosis severely limits the types of work and environment in which she can function. Added to the aforementioned, her lack of stamina has made it impossible to place her in gainful employment.

---

[6] In light of this Court's Recommendation to reverse the decision of the ALJ, it is unnecessary to reach the third issue raised by Plaintiff involving Listing 3.02A.

(Tr. 325.) In an update on February 21, 2013, the VR counselor noted that the agency had made further attempts to place Plaintiff in employment:

> We placed her in a position with an In-House Program to evaluate her ability to work given her functional limitations and provided appropriate accommodations. Unfortunately, even in this extremely accommodating environment she was unable to be successful. [Plaintiff's] health problems stopped her from being able to show up to work as she was too ill. She continues to have chronic Bronchitis and it appears that her immune system is compromised to the point that she seems to catch common colds, etc. more often than typical. We have run out of options at this point and continue to recommend eligibility for social security disability.

(Tr. 326.)

Under the Social Security Regulations, opinions of providers who are not considered medical sources are not binding, but the ALJ must explain the weight given to opinions of these non-medical sources and the reasons for the weight given. *See* SSR 06-03p. Plaintiff argues that the ALJ did not even consider the opinions of the VR counselor, much less explain any weight given to these opinions and that therefore the case should be remanded for proper evaluation of this evidence. Because this Court is recommending reversal and remand for the awarding of benefits, it is not necessary to address this issue in a detailed fashion. However, under different circumstances, the failure of the ALJ to specifically refer to the Vocational Rehabilitation assessments would warrant remand to the Commissioner for reconsideration in order to permit the ALJ to consider the Vocational Rehabilitation statement and state what weight, if any, the decision played in the ALJ's analysis. *See Bird v. Commissioner*, 699 F.3d 337, 343 (4th Cir. 2012) (noting that although another agency's disability determination is not binding on the SSA, such a determination cannot be ignored and must be considered); *Wilson v. Colvin*, No. 1:11CV256, 2014 WL 4274253, at *5-6

13

(M.D.N.C. Aug. 29, 2014) (in remanding case, court directs Commissioner to directly address the weight attributable to claimant's VA disability rating) (Peake, M.J.) (unpublished) *rec. adopted*, slip op. (M.D.N.C. Sept. 17, 2014) (Osteen, Jr., J.) (unpublished); *Suggs v. Astrue*, No. 4:11-CV-128-FL, 2013 WL 466406, at *4 (E.D.N.C. Feb. 7, 2013) (not harmless error where ALJ failed to consider VA disability determination because it may have a bearing on the Social Security determination) (Flanagan, J.) (unpublished); *Watson v. Astrue*, No. 5:08-CV-553-FL, 2009 WL 2423967, at *3 (E.D.N.C. Aug. 6, 2009) (noting that remand is proper where an ALJ fails to explain weight given to a state Medicaid decision) (Flanagan, J.) (unpublished).

## D. Reversal for Award of Benefits

"The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which lies within the sound discretion of the district court. *Kirby v. Astrue*, 880 F. Supp. 2d 695, 701 (E.D.N.C. 2012) (internal quotation and citation omitted). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

Here, because the ALJ's decision to deny benefits and not fully credit the opinion of Plaintiff's treating physician is not supported by substantial evidence, and reopening the record for additional evidence would serve no purpose, remand for reconsideration is not necessary. *See Meyer-Williams*, 2015 WL 339631 at *6. Accordingly, the Court recommends

14

that the Commissioner's decision finding Plaintiff not disabled be reversed and that the matter be remanded for the award of benefits.

## V. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 9) be **GRANTED**, that Defendant's Motion for Summary Judgment (Docket Entry 11) be **DENIED**. **IT IS FURTHER RECOMMENDED** that the decision of the ALJ be **REVERSED** and that this matter be **REMANDED** to the Commissioner for an award of benefits.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
August 25, 2015